NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGARET E. SEMIZ,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF HOPATCONG, *et al.*,<br><br>Defendants. | Civil Action No.: 13-3343 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion for summary judgment filed by Defendants Borough of Hopatcong, Sergeant Michael O'Shea ("O'Shea"), Police Officer ("P.O.") Nicholas Maresca ("Maresca"), P.O. Thomas Snyder ("Snyder"), and P.O. "JOHN DOE" #1-10, individually and in their official capacities (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 56. (ECF No. 22, "Defs.' Mov. Br."). Defendants seek dismissal of Plaintiff's claims of excessive force, malicious prosecution and municipal liability brought under 42 U.S.C. § 1983. (Id.). Plaintiff Margaret Semiz has opposed this motion (ECF No. 25, "Pl.'s Opp. Br.") and Defendants have replied to that opposition (ECF No. 28, "Defs.' Reply Br."). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is denied in part and granted in part.

## BACKGROUND

Plaintiff filed the instant action against Defendants on May 28, 2013, alleging claims for excessive force, malicious prosecution and municipal liability under 42 U.S.C. § 1983. (ECF No.

1

1, "Compl."). Plaintiff's claims arise out of a series of events that occurred on the evening of September 4, 2012 in the Borough of Hopatcong.

Though many of the important facts are disputed, the following facts appear to be conceded by all parties or indisputable in view of the record before the Court. On the evening of September 4, 2012, Defendants O'Shea, Maresca, and Snyder arrived at Plaintiff Margaret Semiz's home to effectuate an arrest of Plaintiff's daughter, Cheryl Semiz. (ECF No. 22-21, Defendants' Statement of Undisputed Material Facts ("Defs.' SMF") ¶¶ 12-23; ECF No. 25-2, Plaintiff's Statement of Undisputed Material Facts ("Pl.'s SMF") ¶¶ 10-12). Upon knocking on the door of Plaintiff's residence, Snyder spoke with Plaintiff's husband, who denied that Cheryl was in the home. (Defs.' SMF ¶ 24; Pl.'s SMF ¶¶ 11-13). When Plaintiff's husband and daughter exited the home shortly after the initial encounter, O'Shea and Maresca approached them and placed them under arrest. (Def.'s SMF ¶¶ 27-28; Pl.'s SMF ¶ 15). After hearing noises outside, Plaintiff exited her home and was also placed under arrest. (Defs.' SMF ¶¶ 34-35; Pl.'s SMF ¶¶ 17, 25). Plaintiff pulled away from O'Shea as he attempted to place her in handcuffs. (Defs.' SMF ¶¶ 37-38; Pl.'s SMF ¶ 22).

After the arrest at her home, Plaintiff, along with her husband and daughter, were transported to the Hopatcong Borough Police Department for processing. (Defs.' SMF ¶ 39; Pl.'s SMF ¶ 25). Plaintiff sat "uncuffed" in a chair positioned against a wall in a "processing room" near Maresca. (Defs.' SMF ¶¶ 41-44; Pl.'s SMF ¶¶ 26-27). The processing room was located across the hallway from the "patrol room" in which Mr. Semiz was placed. (Defs.' SMF ¶ 40). When Plaintiff witnessed O'Shea in the hallway, she stood up from her chair and began walking towards him. (Defs.' SMF ¶¶ 49, 54; Pl.'s SMF ¶ 34). Upon reaching the doorway of the processing room, O'Shea instructed plaintiff to sit back down in the chair, stating: "I thought I told

2

you to sit down." (Def.'s SMF ¶ 61; Pl.'s SMF ¶ 34). Plaintiff was placed back in the chair by O'Shea and Maresca and her back made contact with the wall behind the chair. (Def.'s SMF ¶¶ 68-69; Pl.'s SMF ¶ 36). Though the exact point at which Plaintiff complained of pain is in dispute, after the incident with O'Shea and Maresca, Plaintiff complained of a shoulder injury and EMT's were called to the police precinct. (Defs.' SMF ¶¶ 74-75; Pl.'s SMF ¶¶ 38-39, 41). Plaintiff was taken to Saint Clare's Hospital for treatment. (Def.'s SMF ¶ 77; Pl.'s SMF ¶ 46). Upon treatment by her physician, Dr. Steven Stecker, Plaintiff had surgery on the shoulder at issue in October of 2012. (Pl.'s SMF ¶ 47).

In September of 2012, Plaintiff was charged with a violation of N.J.S.A. 2C: 29-3A(5) (hindering the detention and apprehension of another) and N.J.S.A. 2C: 29-1A (interfering with the administration of justice) in Complaint #S-2012-000296 with regards to the incidents that occurred at her home on the evening that she was arrested. (Def.'s SMF ¶ 80; ECF No. 22-15, Exhibit N to Defs.' Mov. Br., Summons/Complaint at 2-3). Further, in Complaint #S-2012-000297, Plaintiff was charged with a violation of N.J.S.A. 2C:29-2A(1) (attempting to prevent the affection of an arrest in police headquarters) relating to the events that unfolded at the police headquarters. (Defs.' SMF ¶ 47; Complaint/Summons at 6). The Sussex County Prosecutor's Office ultimately dismissed the charges under N.J.S.A. 2C: 29-3A(5) and N.J.S.A. 2C: 29-1A and remanded the charge for resisting arrest at police headquarters to the Municipal Court. (Defs.' SMF ¶ 82).

Plaintiff entered into a plea agreement on April 15, 2013 whereby she pled guilty to violating N.J.S.A. 2C:29-2A(1) for resisting arrest at her residence[1] in exchange for a dismissal of

---

[1] On the night of the Munipical Court hearing, Plaintiff was issued a new complaint and summons for "refusing to put her hands behind her back and pulling away from the officers after being told several time (sic) by the officers that she was under arrest." (Municipal Transcript, 6:10-7:1). Based upon a review of the transcript, it appears that the new summons and complaint was issued in order to effectuate the plea offered by Plaintiff. (See id.).

3

the charge of resisting arrest at police headquarters. (Defs.' SMF ¶¶ 84-86; ECF No. 22-18, Municipal Hearing Transcript at 6-10).

Undoubtedly, the foregoing facts leave holes in the course of events that occurred on the evening of September 4, 2012. The following significant facts, among others, are disputed by the parties.

The parties dispute the manner in which plaintiff was arrested at her residence. Plaintiff asserts that the arresting officer "charged at" her, "'slapped' her around and treated her 'extremely rough.'" (Pl.'s SMF ¶¶ 20-21; ECF No. 25-12, Deposition Transcript of Margarete Semiz, "Semiz Dep. Tr." 74:3-25). Defendants, however, maintain that Plaintiff was "argumentative" and "repeatedly pulled away from [O'Shea] 'frontwards and backwards.'" (Defs.' SMF ¶ 37; ECF No. 22-6, Deposition Transcript of P.O. O'Shea, "O'Shea Dep. Tr." 35:2-20).

The parties also disagree as to the events that occurred at the police station. For example, Plaintiff has taken the position that O'Shea "waive[d] his hand" in order to beckon her to stand up and come forward in his direction. (Pl.'s SMF ¶ 31; Semiz Dep. Tr. 101:19-102:12). She further testified that she attempted to confirm to O'Shea that he was asking her to come forward out of her chair. (Pl.'s SMF ¶ 32; Semiz Dep. Tr. 102:15-20, 103:16-18). By contrast, Defendant O'Shea testified that he did not make any gestures towards Plaintiff as she sat in the processing room. (ECF No. 22-6, Deposition Transcript of O'Shea, "O'Shea Dep. Tr." 46:19-22).

Additionally, and most importantly for the purposes of the present motion, the parties dispute the nature of the force used by O'Shea and Maresca to reseat Plaintiff after she began walking towards O'Shea. Plaintiff alleges that O'Shea used excessive force by charging at her like a "bull" when he "charged [her] back toward [her] seat." (Pl.'s SMF ¶ 35; Semiz Dep. Tr. 108:14-110:4). Plaintiff also testified that "Patrolman Maresca had gotten up and he slammed

4

[Plaintiff] into the chair [and] slammed [her] right arm into the chair." (Pl.'s SMF ¶ 36; Semiz Dep. Tr. 111:10-18). Plaintiff testified that as a result of the force used by Defendants, her "back, shoulders, head, and neck" made contact with the wall causing her shoulder to dislocate. (Pl.'s SMF ¶¶ 37-38; Semiz Dep. Tr. 114:19; 121:1-2). Defendants maintain, however, that Maresca grabbed Plaintiff's right wrist with his right hand and instructed her to sit back down when she nearly exited the processing room. (Def.'s SMF ¶ 64; ECF No. 22-7, Deposition Transcript of Maresca, "Maresca Dep. Tr." 29:1-30:1; O'Shea Dep. Tr. 49:3-6). Defendants further maintain that O'Shea placed his hand upon her chest and "gently pushed her backwards" toward the chair. (Def.'s SMF ¶¶ 65-68; O'Shea Dep. Tr. 49:7-21).

## **LEGAL STANDARD**

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the

summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## DISCUSSION

### A. Material Issues of Disputed Facts Exist that Preclude Summary Judgment on Plaintiff's Claim for Excessive Force under 42 U.S.C. § 1983

Plaintiff alleges in Count II of the Complaint that the individual Defendants are liable under 42 U.S.C. § 1983 for use of excessive force in violation of her civil rights. (Compl. ¶¶ 48-50). Plaintiff's allegation arises from the Defendants' allegedly forcefully pushing her into a chair while under arrest at the Hopatcong police precinct. (Pl.'s Opp. Br. at 4-6). In opposition, Defendants argue that they are protected from suit by the doctrine of qualified immunity. (Defs.' Mov. Br. at 5-18).

The defense of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine "balances the interest in allowing public officials to perform their discretionary functions without fear of suit against the public's interest in vindicating important federal rights." *Ryan v. Burlington County, N.J.*, 889 F.2d 1286, 1292 (3d Cir. 1989) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

In *Saucier v. Katz*, the Supreme Court established a framework for determining whether an officer is entitled to the qualified immunity defense. 533 U.S. 194 (2001).[2] First, a court should

---

[2] In *Pearson v. Callahan*, the Supreme Court noted that the two-step analysis set forth in *Saucier* "is often, but not always, advantageous" and held that a court considering the qualified immunity defense is not required to apply the analysis utilized by the *Saucier* court. 555 U.S. 223, 242 (2009).

6

ask whether "the officer's conduct violated a constitutional right." *Id.* at 201. In an excessive force case, "[t]he relevant inquiry is 'the reasonableness of the officer's belief as to the appropriate level of force,' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20 vision of hindsight.'" *Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007) (quoting *Saucier*, 533 U.S. at 205)). Second, a court should consider "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.'" *Id.* (quoting *Saucier*, 533 U.S. at 202). If an officer could have reasonably believed that his actions were lawful given the circumstances, the officer will be entitled to qualified immunity. *Ryan*, 889 F.2d at 1292.

To be clear, it is "the court, not a jury, [that] should decide whether there is immunity in any given case." *Curley*, 499 F.3d at 210. However, it is the jury that "determines disputed historical facts material to the qualified immunity question." *Carswell v. Borough of Homestead*, 381 F.3d 235 (3d Cir. 2004); *see also Santini v. Fuentes*, 795 F.3d 410, at 419-20 (3d Cir. 2015) (holding that material issues of fact surrounding the applicability of qualified immunity precluded the granting of summary judgment).[3]

As discussed in detail above, the parties here offer conflicting accounts of the events that unfolded at police headquarters, the stage on which Plaintiff's excessive force claim is set. Specifically, the parties dispute whether O'Shea ever gestured to Plaintiff to get up from her seat, whether Plaintiff O'Shea ever directed Plaintiff to sit back down, and the manner in which the officers placed Plaintiff back into the chair. Moreover, these disputed facts underlie the reasonableness of the Defendants' belief that the level of force they used was either appropriate or otherwise an excusable mistake for which they are entitled to qualified immunity.

---

[3] As the Third Circuit has explained, a district court "may use special interrogatories to allow juries to perform th[e] function" of determining disputed issues of fact that underlie the qualified immunity defense. *Carswell*, 381 F.3d at 242. Once the jury has performed its function in that regard, the ultimate question of the defense's availability rests with the Court. *Id.* at 242-243.

The Court finds that Plaintiff has provided sufficient evidence through which a reasonable jury could credit her account of the events that occurred at police headquarters. If the jury believes Plaintiff's account of the events that unfolded at police headquarters—namely, that she stood up and began to walk towards Sergeant O'Shea in response to his gesture to do so and was thereafter charged at and shoved into the wall, causing her shoulder to dislocate—then the Court will decide whether the officers' conduct was nonetheless reasonable or otherwise an excusable mistake, such that they are protected by qualified immunity. *See Carswell*, 381 F.3d at 243.

Accordingly, Defendants' summary judgment motion regarding the underlying claim of excessive force (Count II) is DENIED.

### B. Defendants are Entitled to Summary Judgment on Plaintiff's Malicious Prosecution Claim as Plaintiff has not made a Prima Facia Case for Relief

Plaintiff alleges in Count III of the Complaint that the individual Defendants are liable under 42 U.S.C. § 1983 for malicious prosecution in violation of her civil rights. (Compl. ¶¶ 51-59). Plaintiff's allegation of malicious prosecution relate only to the charge arising out of the events occurring at the police station, which were dismissed in exchange for Plaintiff pleading guilty to charges arising out of the events occurring at her home. (Id.). The parties dispute whether a *prima facie* case has been established concerning the necessary elements of a malicious prosecution claim. To prevail in a malicious prosecution action under Section 1983, a plaintiff must demonstrate that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (quotations omitted). Defendants argue, *inter alia*, that Plaintiff is unable to demonstrate the fifth element of a malicious prosecution claim, namely, that she suffered a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." (See Defs.' Mov. Br. at 19-23). Specifically, Defendants note that Plaintiff cannot meet the fifth element because after the completion of the booking process relating to the charges arising from the events at Plaintiff's house, "she was released with no further constraints whatsoever, save for appearing in Municipal Court to appear and answer the subject [c]omplaint." (Id. at 19). Moreover, Defendants contend that there is no evidence that the issuance of the subject complaint in any way "delayed the booking process or caused any additional deprivation of liberty beyond that which she was already undergoing from the booking process." (Id.).

In opposition, Plaintiff contends that she has adequately pleaded a deprivation of her liberty because "all of the Court appearances were directly attributable to the Resisting Arrest charge that was dismissed (relating to the standing up at the precinct." (Pl.'s Opp. Br. at 17). Thus, the question before the Court is whether Plaintiff has shown a deprivation of liberty sufficient to plead her malicious prosecution claim based solely on her required attendance in the municipal court relating to that charge.

The Third Circuit has unequivocally held that mere attendance at one's municipal court trial does not constitute a deprivation of liberty sufficient to meet a malicious prosecution claim. *See DiBella*, 407 F.3d at 602 (affirming the district court's judgment vacating a jury verdict in favor of plaintiffs on a malicious prosecution claim where plaintiffs "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services"). Indeed, while "[p]retrial custody and some onerous types of pretrial,

9

non-custodial restrictions constitute a Fourth Amendment seizure [,] ... [a party's] attendance at trial [does] not qualify as a Fourth Amendment seizure." *Id.*; *see also Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998) (holding that, for purposes of a seizure, "the limits of the Fourth Amendment protection relate to the boundary between arrest and pretrial detention.").

Plaintiff's claim of deprivation of liberty is grounded solely in her mandatory attendance at the Hopatcong Municipal Court. (See Pl's. Opp. Br. at 17). Indeed, Plaintiff has not directed the Court to any "onerous types of pretrial, non-custodial restriction" *DeBella*, 407 F.3d at 602, that she suffered on account of the charges arising out of the events at headquarters. Accordingly, Plaintiff has failed to establish the fifth element of a malicious prosecution claim and has therefore Plaintiff has failed to adequately plead a malicious prosecution claim under 42 U.S.C. § 1983. For this reason, Defendants' summary judgment motion is GRANTED as to Count III.

## CONCLUSION

For the reasons stated herein, the Court grants Defendants' motion for summary judgment as to Counts I (general Section 1983 claim), III (malicious prosecution), and IV (municipal liability) of Plaintiff's Complaint and denies summary judgment as to Count II (excessive force) of Plaintiff's complaint. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:   January 28th, 2016

_____

JOSÉ L. LINARES
UNITED STATES DISTRICT JUDGE

11